STATE OF MAINE
HANCOCK, SS.

Docket No. RE-04-14
ULH - HAN -6/21/2007

DONALD TOZIER,               )
                 Plaintiff   )
                             )
                             )
          v.                 )          **DECISION and JUDGMENT**
                             )
                             )
KENNETH C. JOHNSON,          )
SHARON D. JOHNSON,           )
JOANNE ST. PIERRE,           )
JOSEPH ST. PIERRE, and       )
KENNETH C. JOHNSON           )
LIVING TRUST,                )
                 Defendants. )

The Plaintiff's Second Amended Complaint of August 19, 2004, seeks a declaratory judgment regarding certain real estate located in Lamoine, Maine, and an award of damages for common law trespass and timber trespass upon said property. Defendants also seek a declaratory judgment in their Counterclaims. A non-jury trial was held on December 11-13, 2006. All parties were present and represented by counsel.

Despite the volume of paperwork and extent of testimony offered at trial, these claims present remarkably well defined issues for the court's determination. The parties' current unhappy circumstances are the result of some undeniably poor draftsmanship in the deeds which conveyed the properties in question. Although the parties have experienced a contentious and troubled relationship, the true perpetrators of this conflict were not present at trial.

On February 5, 1973, John Davies conveyed a parcel of land in Lamoine to Charles Katsiaficas. See Plaintiff's Exhibit 2. This deed is the "source deed" for all properties at issue in this matter. On October 20, 1975, Katsiaficas conveyed the southernmost of three parcels to Richard and Carol Dittman. See Plaintiff's Exhibit 3. This conveyance included a fee interest in the so-called forty-five foot strip subject to an easement for access to the northerly properties still owned by him. In an interesting turn of events, on September 1, 1977, Katsiaficas executed a second deed to the Dittmans (see Plaintiff's Exhibit 6) which was identical in all respects except that it deleted the conveyance of the fee interest in the forty-five foot strip and purported to substitute an easement for use of that property. On the same date, Katsiaficas conveyed the "middle" parcel to the Johnsons along with a fee interest in the forty-five foot strip. See Plaintiff's Exhibit 5. To further complicate matters, Katsiaficas executed a so-called corrective deed to the Dittmans on November 14, 1979. See Plaintiff's Exhibit 7.

Although Mr. Katsiaficas may be commended for his creativity in attempting to unilaterally undo a conveyance of real estate, his efforts at legal legerdemain must fail. In order to accomplish such a transaction, some manner of consent by the grantees must be evidenced by an acceptance of the deed. In fact, the Dittmans had no knowledge of these undertakings until well after the fact.[1] The court has little difficulty – or choice – in concluding that the Plaintiff retains fee interest in the forty-five foot strip and the Defendants have an easement for use of that road.

The parties dispute the location of the east-west boundary which separates their properties. The record suggests that neither party was particularly aware of this conflict until fairly late in these proceedings. The stakes have been significantly raised by the construction of a residential dwelling by the St. Pierres within the disputed area.

The parties deeds (Plaintiff's Exhibits 3 and 5)[2] use similar language. The east-west boundary between them is a monument – the southernmost boundary of the "E.D. Gould" lot.[3] For ease of reference in this Decision, the court will refer to this boundary as "the Gould line." Each surveyor has his own opinion of where the Gould line is located upon the face of the earth. For ease of reference in this Decision, the court will refer to them as the Bowden line and the Salsbury line respectively. The court's' task – appearing deceptively easy upon its face – is to determine which of these interpretations is correct.

The Gould line does not appear as a discrete boundary upon the face of the earth. No rock wall or tree line give any suggestion of its location. The passage of time has obliterated any natural markers. The deeds give no reference to lasting markers. Accordingly, although the Gould line is accorded the status of a monument, its location must be ascertained.

The surveyors retained by the parties undertook markedly differing approaches to the issue. The court will address them separately.

Richard I. Bowden, a Registered Land Surveyor since 1991, was initially retained by the Plaintiff in 2000 to lay out a parallelogram shaped parcel from the larger piece to sell to his uncle Charles Tozier. In 2003, the Plaintiff called him back to undertake a

---

[1] The Defendants argue that the Dittmans accomplished an after-the-fact ratification of the modified property description when they used the modified description in their conveyance to the Plaintiff herein. In fact, the use of the modified description was a legal blunder – admitted quite frankly – by the attorney who prepared the deed. He neglected to verify the actual (original) date of the conveyance and simply used the later, inaccurate one. He did not advise the Dittmans of this circumstance. Upon these facts, the Dittmans cannot be said to have accepted the modified deed.

[2] Plaintiff's Exhibit 4 is a conveyance of the northernmost of the three properties to Carl and Georgia Nelson.

[3] As another example of the shoddy descriptions used in the deeds, both deeds refer to this boundary line as being 160 rods long when, as the parties agree, it can be only 120 rods wide. The source properties were never wider. [NOTE: this also calls the deed references to acreage quantities into question.]

further survey after he observed the Defendants clearing property upon what he believed to be his land. Bowden was unable to complete the survey report until the next summer.

Bowden located a blue surveyor's post on the northwestern corner of Plaintiff's claimed property and a blue-blazed line running from west to east across the property.[4] Bowden was unable to locate the surveyor's post upon recent visits. He also located a wet-east line of blazed trees somewhat southerly of this line. He described the blazing in this area to be amateurish and not typical of a surveyor's work.[5]

Bowden attempted to locate the Gould line utilizing the description in the deed. Starting at the southwest corner of the property, he traced the lines, but found them to be consistently erroneous. After running all of the boundaries, he concluded that the distances were so far off the mark that they could not be independently trusted to establish the lines of the property. He undertook to locate the monument which would definitively establish the east-west boundary – the Gould line. The discrepancies in distance calls and the uncertainly of the location of the Gould line certainly establish an ambiguity in the deed requiring judicial intervention.

In doing so, he worked from north to south. Katsiaficas had undertaken a subdivision on the Douglass Highway northerly of these properties. Surveyor George Conary had prepared a subdivision survey which was approved by the Lamoine Planning Board and was duly recorded. This survey, which locates the subdivision upon the face of the earth connects with the Nelson property which constitutes the northern boundary – a monument – of the Johnson property. With the northerly boundary of the Johnson property thus established, Bowden used deed references to work to the southerly boundary which arrives – perhaps serendipitously – directly upon an east-west blazed line.[6]

Steven Salisbury, also a Registered Land Surveyor, undertook a markedly different methodology. Salisbury considered the land to the south of the Plaintiff's property, the so-called Schmidt lot, to be sufficiently established upon the face of the earth as to constitute an appropriate monument to run the Plaintiff's southerly boundary upon. [NOTE: all parties consider the Graves property, to the east of the parties' properties, to be a fixed and discernable monument, and agree that their

---

[4] This is the line which Bowden ultimately concluded was the Gould line (i.e. – the Bowden line).

[5] Defendant Kenneth Johnson testified that he blazed this line as well as the other two west-east line.

[6] The blazing of this line requires some discussion. Bowden described it as blazed with blue paint in a fashion that a professional surveyor would do. He estimated its age at approximately thirty years – the approximate time when Conary would have surveyed the subdivision. Dittman testified that he observed this blazing (and the blue surveyor's post) from the time when he obtained his property in 1975 and considered it to be his northern boundary. Kenneth Johnson asserts that he, in fact, blazed this line in anticipation of selling a portion of his property. In the apparent absence of the possibility of two lines in the same vicinity, the court must consider the Bowden/Dittman testimony to be the more compelling.

easterly boundaries run along the Graves line – reflecting the erroneous 160 rod call distance for the east-west lines in their deeds.]

Salsbury's methodology involved simply using the deed distances to locate the northerly end points of the Plaintiff's east and west boundaries. By connecting these lines, he locates the northerly boundary of Plaintiff's land – presumptively the Gould land.

The court commends the surveyors for their respective methodologies. Neither can be said to be inherently flawed or presumptively invalid. It falls to the court to adopt one to resolve the dispute. Each has its own strengths.

It is well established in Maine law that the following priorities are to be utilized in determining boundaries: monuments, courses, distances, and quantity.. Each surveyor applied these standards in his own fashion.

Both appropriately used the Graves boundary as a monument for the easterly boundaries. In the court's view, Bowden appropriately undertook to locate the Gould line to anchor the property's footprint. The Gould line is referenced as a monument in the deed (Plaintiff's Exhibit 3). By contrast, Salsbury uses the property of an abutter to the south – not mentioned as a monument in the deed – as his starting point. Bowden's analysis starts with the Douglass Highway subdivision – a conveyance by the same grantor – which was approved by the municipal planning board and recorded as such. Clearly the location of this property is definitively established upon the face of the earth. Conary's survey links like a puzzle piece to the Nelson property to the north. Following southward, the three conveyances connect according (roughly) to the deeds' dimension calls (such as they are). Salsbury's approach involves stacking the dimensions of the Plaintiff's and Defendants' properties from south to north. Unfortunately, even allowing for some flexibility in the dimension calls, this results in a large and inexplicably unconveyed parcel of land between the Nelson and Johnson properties. In an attempt to resolve this anomaly, the Defendants procured a "corrective" deed conveying whatever interest Katsiaficas had in this area.[7]

Upon this review, the court accepts and adopts Mr. Bowden's survey, approach, and conclusions. The court is satisfied that the Bowden line is, in fact, the Gould line. As such, it is the east-west border between the properties and the court declares it to be such.

The court reaches this conclusion with misgivings due to the fact that the St. Pierres have invested significant time, expense, and personal feeling in their home which is now declared to be south of the border. If a different result could be reached to avoid the upheaval which this Decision will certainly create, it would surely have been reached. However, this matter must be decided upon the four corners of the law, and the court is satisfied that the law and findings of the court dictate this result.

---

[7] This suggests to the court that Katsiaficas had intended, in the first instance, to convey all of his interest in the all the subject property via the three conveyances noted herein.

On the Plaintiff's claim of common law trespass (Count II), the court awards nominal damages. On the Plaintiff's claim for trespass to timber, the court finds the Plaintiff's actual damages to be $5280. However, the court finds that the Defendants' actions to be without fault, 14 MRSA §7552(3)(B), and reduces the damages to $500. Pursuant to 14 MRSA §7552(4)(2), the doubling section, Judgment is rendered in favor of the Plaintiff against the Defendants jointly and severally in the amount of $1,000, plus interest and costs.

So Ordered.

The Clerk may incorporate this Order upon the docket by reference.

Dated: February 16, 2007

_____
Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT

**FILED &
ENTERED**

FEB 2 0 2007

**SUPERIOR COURT
HANCOCK COUNTY**